## JACOB S. MEISTER ET AL.

### v.

## THE CLEVELAND DRYER COMPANY.

1. SALE—AUTHORITY OF AGENT.—In all cases, whether the agency be of a general or special nature, it includes, unless the inference is expressly excluded by other circumstances, all the usual modes and means of accomplishing the objects and ends of the agency. So, an agent employed to sell, has authority to give the purchaser a reasonable time within which to accept or reject the proposition of sale.

2. AGENCY—RATIFICATION.—Slight circumstances will sometimes suffice to raise the presumption of a ratification, and where a principal, on being informed of the act of his agent, merely replied that he was sorry, and did not dissent at once, he will be considered as having ratified such act.

APPEAL from the Superior Court of Cook county; the Hon. R. S. WILLIAMSON, Judge, presiding. Opinion filed July 25, 1882.

Messrs. MOSES & NEWMAN, for appellants.

Messrs. QUIGG & TUTHILL, for appellee.

WILSON, P. J. This was a suit brought by J. S. Meister & Co. against the Cleveland Dryer Company to recover damages for a refusal of the latter to deliver a quantity of pork and beef cracklings which the plaintiff claimed to have purchased from the defendant through its agents, Obendorf & Co., at Chicago.

The case, as shown by the evidence, was substantially as follows: On or about September 26, 1880, appellee, by its treasurer, Coe, authorized Obendorf & Co., as its agents, to sell the cracklings at forty dollars per ton for pork and thirty-five dollars per ton for beef, to be delivered free on board the cars at Milwaukee, during the packing season, which extended from November 1st to March 1st.

September 28th, Obendorf & Co. offered the goods to the plaintiffs at the prices named, to be paid for on delivery, the offer to remain open for acceptance two days, until noon of

the 30th, at which time it was accepted by the plaintiffs, the offer not having been withdrawn previous to such acceptance. Meanwhile Obendorf & Co. received a letter from Coe, dated September 28th, saying, "Since arriving at Cleveland this morning I see that cracklings are worth more than prices named. I now do not want you to sell at less than $45 per ton for lard and $40 for beef." Immediately on the receipt of this letter, Obendorf & Co. answered by letter as follows:

"CHICAGO, Sept. 29, 1880.

"CLEVELAND DRYER Co., Cleveland, O.

"*Gentlemen:* Yours of the 28th received, and contents duly noted; but there is one case which we wish you to remember, and that is this: We have offered these cracklings to a party at $40 and $35, F. O. B. Milwaukee, terms and conditions as left with us by your Mr. Coe. This party took refusal, and telegraphed reply to be due by Friday morning mail from the East. Now, if this party accepts, we must cither let them go or be held for them. We must ask you to stand by us; at all events, we will let you know by Friday whether they were accepted or not.

"Yours respectfully,

"OBENDORF, LIDHEIMER & Co."

On the 30th, at noon, the plaintiffs accepted the offer to sell, and Obendorf & Co. at once telegraphed the company: "Cracklings sold. Parties accepted as stated in our letter of Wednesday." The telegram was received at 11.35 A. M. of same day, and at 2 P. M. the company answered by postal card: "Sorry to learn about cracklings. Please do not sell any dry tanking and blood until we see you first part of next week."

Between December and March following, cracklings had advanced in price about $15 per ton, and were worth on and before March 1st about $55 for pork and $50 for beef. The evidence showed a refusal by the company to deliver the goods. It was not claimed by the plaintiffs that Obendorf & Co. were the agents of the company in respect to its business generally, though they had bought and sold for the company for several years when requested.

Meister v. Cleveland Dryer Co.

Under the facts shown by the evidence, we are of opinion that the plaintiffs were entitled to recover. By authorizing Obendorf & Co. to place the cracklings on the market for sale, appellee constituted them its general agents in respect to the particular matter of selling the goods, and the plaintiffs, as purchasers, were not bound by any limitations on the agents' authority, of which they had no notice. The sale was, in fact, made in strict accordance with the agents' actual authority as to price and terms of payment; but it is objected that the agents exceeded their authority by giving the plaintiffs a refusal of the goods for two days' time. The point we think is untenable. Aside from the fact that the plaintiffs had no notice of any restriction or limitation on the agents' authority in this respect; the giving of a refusal for two days was not only not at variance or inconsistent with the authority to sell, but it was an act falling within the reasonable discretion of the agents in negotiating the sale. It needs no proof of usage or custom, for it is matter of common knowledge and observation that in commercial negotiations, refusals for brief periods are constantly given, and properly so. The convenience and necessities of trade render such a practice, in many cases, very useful, not to say indispensable. In Story on Agency, it is said: "In all cases, whether the agency be of a special nature or of a general nature, it may be laid down as a universal principle, that it includes, unless the inference is expressly excluded by other circumstances, all the usual modes and means of accomplishing the object and ends of the agency." It would hardly be contended that if appellee had not written the letter of revocation of September 28th, the sale would not be binding, merely by reason of the fact that the plaintiffs had a refusal of the goods for two days before accepting the offer.

But if it were conceded that Obendorf & Co. exceeded the limits of their authority in making the sale, we think the failure of appellee to seasonably disaffirm the sale after being informed it had been made, was in law, a ratification of it. It is a familiar rule that where an agent is authorized to do an act, and he transcends his authority, it is the duty of the

principal to repudiate the act as soon as he is informed of what has been done by his agent,. otherwise he will be bound by the act as having ratified it by implication. Ward v. Williams, 26 Ill. 451; and Judge Story says: "Slight circumstances and small matters will sometimes suffice to raise the presumption of a ratification."

Here not only did appellee, when informed by its agent of the fact of the two days' refusal, not express any dissent, remaining wholly silent, but subsequently upon receipt of the telegram that the offer had been accepted and the goods sold, the company merely expressed its sorrow at what had happened, and directed the agents not to sell the other goods until they should see them the next week. So far from repudiating the sale, appellee in its postal used language which can only be construed as evincing acquiescence, though a regretful one ; and this must be held to be a ratification.

The judgment of the court below is reversed, and the cause remanded.                             Reversed and remanded.